# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF WEST VIRGINIA
# CLARKSBURG

**BEVERLY J. LAMBERT,**

    Plaintiff,

v.                                           Civil Action No. 1:14-CV-57
                                                      (BAILEY)

**STRYKER CORPORATION, a foreign corporation;
STRYKER SALES CORPORATION, a foreign
corporation; HOWMEDICA OSTENONICS
CORPORATION, a foreign corporation doing
business as Stryker Orthopaedics; and UNITED
HOSPITAL CENTER, INC., a West Virginia Corporation,**

    Defendants.

## MEMORANDUM OPINION AND ORDER
## GRANTING PLAINTIFF'S MOTION TO REMAND

Pending before this Court is Plaintiff's Motion to Remand [Doc. 15], filed April 30, 2014. This motion has since been briefed and is now ripe for decision. Having reviewed the record and considered the arguments of the parties, this Court concludes that Plaintiff's Motion to Remand **[Doc. 15]** should be **GRANTED**.

### I. Background

On or about October 6, 2010 the plaintiff underwent a total hip replacement at United Hospital Center ("UHC"). There, surgeons replaced the plaintiff's left hip with a Stryker Rejuvenate hip implant. Following implantation, the device failed, which the plaintiff claims resulted in significant pain and injury to the plaintiff. The hip implant was removed on

1

March 20, 2013. The plaintiff alleges that the Stryker defendants manufactured and distributed a defective hip implant to defendant UHC.

The plaintiff filed a Complaint for Injunctive Relief civil action in the Harrison County, West Virginia Circuit Court in September, 2013 [Doc. 1], seeking, in part, to preserve the hip implant and any related materials. The Circuit Court granted preliminary injunctive relief against defendant United Hospital Center on October 31, 2013 [Doc. 1-19]. The plaintiff filed a First Amended Complaint in Harrison County on March 14, 2014 [Doc. 1-6]. The plaintiff's sixth claim is against both the Stryker defendants and defendant UHC, for "spoliation of evidence and strict product liability in tort and violation of the West Virginia Consumer Credit and Protection Act." [Doc. 1-6 at 21–22]. The remaining five causes of action appear to be directly only against the Stryker Defendants and are: 1) strict products liability in tort, gross negligence, and reckless conduct; 2) breach of implied warranty of merchantability, breach of implied warranty of fitness for particular purpose, and breach of express warranty; 3) negligent and/or fraudulent misrepresentation and fraudulent concealment; 4) fraudulent inducement and suppression; and 5) violation of West Virginia Consumer and Credit Protection Act.

On March 31, 2014, the Stryker defendants filed a Notice of Removal with this Court, citing diversity jurisdiction as the sole grounds for removal [Doc. 1]. The defendants claim the following: 1) there is complete diversity of citizenship between the plaintiff and the Stryker defendants, which are the only defendants properly joined in this action; 2) defendant United Hospital Center is a fraudulently joined party, or, alternatively, a misjoined party, whose presence does not defeat diversity; and 3) that the amount in controversy requirement is satisfied [Doc. 1].

On April 30, 2014, the plaintiff filed her Motion to Remand [Doc. 15] and Memorandum in Support thereof [Doc. 17], stating that the plaintiff has pled legally valid claims against the non-diverse defendant United Hospital Center. As such, there is no claim for fraudulent joinder and the defendant has not been misjoined [Doc. 17 at 5–20]. Additionally, the plaintiff claims that the defendants failed to remove the case within thirty days of filing the initial complaint [Id. at 21–22], and that the defendants waived any right to remove the action by voluntarily litigating in state court [Id. at 23–25]. Finally, the plaintiff claims that defendant UHC has not consented to removal as required by 28 U.S.C. § 1446(b)(2)(A) [Id. at 26].

On May 21, 2014, the defendants filed a Memorandum in Opposition to Plaintiff's Motion to Remand [Doc. 22]. The defendants reiterate their position that defendant UHC is an improperly joined party and that the plaintiff has no possibility of prevailing on her claims against UHC [Id. at 4–23]. The defendants also dispute the plaintiff's claim that removal was untimely and that the defendants waived their right to remove [Id. at 23–26]. Finally, the defendants contend that UHC's consent is not required because UHC is a fraudulently joined party [Id. at 26–27].

In her reply, the plaintiff reasserts that she has viable causes of action against UHC and that the claims are sufficient to defeat any claim of fraudulent joinder [Doc. 24].

## II. Legal Standard

Under 28 U.S.C. § 1441, a defendant may remove a case from state court to federal court in instances where the federal court is able to exercise original jurisdiction over the matter. Federal courts have original jurisdiction over primarily two types of cases: (1) those involving federal questions under 28 U.S.C. § 1331, and (2) those involving citizens of

different states where the amount in controversy exceeds $75,000.00, exclusive of interests and costs pursuant to 28 U.S.C. § 1332(a).

The complete diversity requirement of § 1332(a) is only satisfied where the lawsuit contains "no plaintiff and no defendant who are citizens of the same state." ***Wis. Dep't of Corrs. v. Schacht***, 524 U.S. 381, 388 (1998). The fraudulent joinder doctrine provides an exception to the complete diversity requirement and allows a district court to assume jurisdiction even if there are nondiverse defendants at the time of removal. ***E.D. ex rel. Darcy v. Pfizer, Inc.***, 722 F.3d 574, 578 (4th Cir. 2013). Fraudulent joinder exists "when a court finds either that no cause of action is stated against [a] nondiverse defendant, or in fact no cause of action exists." ***AIDS Counseling & Testing Ctrs. v. Group W Television, Inc.***, 903 F.2d 1000, 1003 (4th Cir. 1990).

The party alleging fraudulent joinder bears a burden to show that the plaintiff cannot establish a claim even after resolving all issues of law and fact in the plaintiff's favor. ***Hartley v. CSX Transp.***, 187 F.3d 422, 423 (4th Cir. 1999). The fraudulent joinder standard "is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)." ***Mayes v. Rapoport***, 198 F.3d 457, 464 (4th Cir.1999). The plaintiff need only have a "slight possibility of a right to relief" against a non-diverse defendant for jurisdiction to be improper in federal court. ***Hartley***, 187 F.3d at 426.

### III. Discussion

The plaintiff argues that removal was improper because this court lacks subject matter jurisdiction on six grounds: 1) complete diversity does not exist between the parties;

4

2) defendant Stryker failed to remove within thirty days of receipt of the plaintiff's initial Complaint; 3) Stryker waived any right of removal by litigating in state court prior to removal; 4) Stryker's delay in removing the case requires remand; 5) defendant UHC did not consent to removal; 6) defendant UHC was a properly joined party in the state court action.

Because the Court finds that complete diversity does not exist between the parties, and that defendant UHC was neither fraudulently joined nor misjoined, the matter must be remanded to the Circuit Court of Harrison County, West Virginia.

### A.     Fraudulent Joinder

The parties do not dispute that the plaintiff and defendant UHC are both residents of West Virginia. As such, no diversity exists unless the defendants can prove that the case falls within the fraudulent joinder doctrine, which provides an exception to the complete diversity requirement. The Court finds that, in resolving all issues of law and fact in the plaintiff's favor, the defendant has failed to carry its heavy burden to demonstrate fraudulent joinder.

The plaintiff asserts that she has a valid cause of action against the nondiverse UHC defendant for misappropriation, intentional spoliation of evidence, strict product liability and consumer protection violation, and civil conspiracy. The plaintiff's claims are based on her contention that defendant UHC took the hip implant and related materials that were removed from the plaintiff, including metal debris and human bone and flesh, and gave them to defendant Stryker.

The Court finds that the plaintiff may have a cause of action against the hospital defendants. The plaintiff's allegations of intentional spoliation and strict product liability

5

against defendant UHC are not barred as well-settled law.

### 1. Intentional Spoliation of Evidence

With respect to the claim for intentional spoliation of evidence, the defendants contend that the plaintiff may not maintain a spoliation of evidence claim against UHC on the grounds that West Virginia does not recognize spoliation of evidence as a stand-alone tort when the spoliation is the result of the negligence of a party to a civil action and because the plaintiff failed to allege the elements of an intentional spoliation claim.

West Virginia recognizes claims for intentional spoliation of evidence. The elements of an intentional spoliation claim in West Virginia are:

> (1) a pending or potential civil action; (2) knowledge of the spoliator of the pending or potential civil action; (3) willful destruction of evidence; (4) the spoliated evidence was vital to a party's ability to prevail in the pending or potential civil action; (5) the intent of the spoliator to defeat a party's ability to prevail in the pending or potential civil action; (6) the party's inability to prevail in the civil action; and (7) damages.

***Webb v. Raleigh Cnty. Sheriff's Dep't***, 761 F. Supp. 2d 378, 396-97 (S.D. W.Va. 2010).

The plaintiff's First Amended Complaint states that "Defendant UHC . . . intentionally combined and conspired to spoliate material evidence in the case," "knew at the time that such material evidence would be important and essential to any claim or litigation," and that it was done "for improper purposes to damage Plaintiff" and resulted in harm to the plaintiff [Doc. 1-6 at ¶ 97–103].

Although the allegations in the first amended complaint are sparse, as it currently stands the plaintiff alleges facts which, if true, have a chance of success. As such, the Court cannot conclude that the plaintiff cannot prevail on a claim for intentional spoliation of evidence against UHC.

2. <u>Strict Product Liability</u>

Even if the Court were unable to find that the plaintiff may maintain a cause of action for spoliation of evidence, the plaintiff is not barred from maintaining a cause of action for strict product liability as a matter of well-settled law.

The defendant contends "the overwhelming majority of jurisdictions . . . classify hospitals as providers of medical services rather than sellers or distributors of products," and as such may not be held strictly liable in tort as an alleged seller or distributor of the product at issue. The plaintiff relies on a Tenth Circuit Court of Appeals case, a recent Southern District of West Virginia case applying California law, and a District of South Carolina case.

The plaintiff states that there is no binding precedent in this Court on the issue of strict product liability for hospitals and that the West Virginia Supreme Court has expressed its support of strict product liability for hospitals. The plaintiff relies on ***Blankenship v. Ethicon, Inc.***, a West Virginia Supreme Court case where patients alleged strict liability, among other causes of action, against hospitals for improperly sterilized sutures. ***Blankenship v. Ethicon, Inc.***, 221 W. Va. 700, 656 S.E. 2d 451 (2007). The West Virginia Supreme Court did not directly address the issue of strict product liability with respect to hospitals in its opinion. Justice Starcher's opinion, concurring in part and dissenting in part, states as follows:

> There is nothing new or novel in the hospitals' arguments about medical providers being exempt from products liability law. Since the 1970s, hospitals and doctors have argued that they are not common, ragamuffin retailers of products, but are healers of the sick not subject to strict products liability. Hospitals and doctors have argued they were â€œmere conduitsâ€

7

in the distribution of medical products to patients, and should therefore be exempt from common law rules that imposed liability on distributors of non-medical products. Carmichael v. Reitz, 17 Cal.App.3d 958, 979, 95 Cal.Rptr. 381 (1971). . . . Many courts initially accepted this logic, and adopted a "hospital exemption" that presumed that defective products and equipment are merely incidental to the professional service provided by hospitals and doctors.

But in recent years, the economics of the medical industry have changed, and courts have begun to swing the opposite direction. . . . "[A]t the start of the 21st century, both the health care and hospital industry have evolved to become one of the most profitable industries in the United States and therefore could be economically mature to handle strict products liability.... In terms of function, the hospital of just twenty years ago bears little resemblance to today's complex corporate entity . . . " Hospitals today are no longer non-profit, charitable affairs but are massive corporate structures. . . .

In recognition of this change in the medical system, the drafters of the Restatement of the Law have recently concluded that hospitals and doctors can, and should, be held liable for defectively manufactured medical products distributed to patients. The latest iteration of the Restatement Third says:

A retail seller or other distributor of a prescription drug or medical device is subject to liability for harm caused by the drug or device if:

(1) at the time of sale or other distribution the drug or medical device contains a manufacturing defect..; or

(2) at or before the time of sale or other distribution of the drug or medical device the retail seller or other distributor fails to exercise reasonable care and such failure causes harm to persons.

***Blankenship v. Ethicon, Inc.***, 221 W. Va. 700, 711–12, 656 S.E.2d 451, 462–63 (2007)

(internal citations omitted).

As neither the plaintiff nor the defendants cite binding precedent for whether a hospital is exempt from product liability law, there is a chance that UHC may be held liable under strict product liability. However, the Court is sufficiently persuaded by the West Virginia Supreme Court of Appeals' statements in ***Blankenship*** that, for purposes of a motion to remand, the plaintiff may have a valid cause of action against the hospital. As

8

such, the plaintiff's joinder of UHC cannot be deemed fraudulent.

### B. Diversity of Parties—Misjoinder

The defendant's Notice of Removal alternatively states that UHC was misjoined under Federal Rule of Civil Procedure 20(a). [Doc. 1 at 12–14]. The defendant contends that no significant links exist between the material facts of the plaintiff's product liability claims against Stryker and plaintiff's separate claims against UHC.

Rule 20 allows permissive joinder of defendants where "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and . . . any question of law or fact common to all defendants will arise in the action." FED. R. CIV. P. 20(a)(2)(A) and 20(a)(2)(B).

The defendant cites to a District of Minnesota case involving product liability claims asserted against Stryker [Doc. 1-4 at 6–9]. In the case of *Akin v. Stryker Corporation*, the district court found that the malpractice, negligence, or misrepresentation claim against the hospital defendants did not involve common questions of law or fact and assert joint, several, or alternative liability arising out of the same transaction, occurrence, or series of transactions or occurrences as the product liability claims asserted against the device manufacturer [Id.].

The District of Minnesota case is distinguishable. In *Akin*, the plaintiff's claim against the hospital defendant was for malpractice, negligence, or misrepresentation with respect to the plaintiff's care, treatment, and services provided by the hospital. In the instant case, the plaintiff alleges a strict product liability claim against defendant UHC, the

same claim as the strict product liability claim against the Stryker defendants. As such, UHC is not misjoined.

Because both the plaintiff and defendant UHC are residents of West Virginia, and UHC is neither fraudulently joined nor misjoined, the complete diversity requirement of 28 U.S.C. § 1332(a) is not met, and the matter must be remanded.

### IV. Conclusion

For the reasons stated above, this Court hereby **GRANTS** the plaintiff's Motion to Remand **[Doc. 15]**. Accordingly, this case is **REMANDED** to the Circuit Court of Harrison County, West Virginia.

It is so **ORDERED**.

The Clerk is hereby directed to transmit copies of this Order to counsel of record herein.

**DATED:** July 30, 2014.

JOHN PRESTON BAILEY
CHIEF UNITED STATES DISTRICT JUDGE